GORDON E. WASS AND ANOTHER, d.b.a.
ELK RIVER SKELLY TRUCK STOP, AND ANOTHER
v. THE HONORABLE WENDELL
ANDERSON AND OTHERS.

252 N. W. 2d 131.

March 25, 1977—No. 46721.

*Dorn & Berglund* and *Wilbur F. Dorn, Jr.,* for appellants.

*Warren Spannaus,* Attorney General, *Richard B. Allyn,* Solicitor General, and *Stephen F. Befort,* Special Assistant Attorney General, for state respondents.

*John T. Hoeft,* for chairman, Metropolitan Council.

*Popham, Haik, Schnobrich, Kaufman & Doty* and *David S. Doty,* for Chairman, Metropolitan Transit Commission.

Considered and decided by the court en banc.

PETERSON, JUSTICE.

Plaintiffs are individuals and corporations doing business as commercial truck stops. They brought suit against defendants, seven state officers and two other individuals, for a declaratory judgment that L. 1975, c. 203, is unconstitutional because it violates Minn. Const. art. 4, § 17, the "single subject rule";[1] and because it violates art. 4, § 21, proscribing passage of a bill on the last day of the legislative biennial session. The trial court granted defendants' motion for summary judgment. Plaintiff appeals from the entry of summary judgment on the sole ground that L. 1975, c. 203, violates the single subject rule.

Laws 1975, c. 203, is a lengthy act with a lengthy title. The act is described in its title as "An act relating to transportation." This general description is followed by a more specific description of the sections of the act. The title reads:

"An act relating to transportation; increasing the tax on gasoline and special fuels; eliminating the excise tax on certain

---

[1] Minn. Const. art. 4, § 17, provides: "No law shall embrace more than one subject, which shall be expressed in its title."

products from waste materials; decreasing the tax levies authorized for the metropolitan transit commission; providing for a redefinition of the transit taxing district; authorizing contract service beyond the boundaries thereof; authorizing a limited tax outside the boundaries thereof; providing for public transit assistance and demonstration projects; establishing conditions upon the construction of certain highways; amending a route on the interstate system; adding additional routes to the trunk highway system; providing for the construction of acoustical barriers on interstate highways; reapportioning five percent of the highway user tax; allocating part of the tax for bridge purposes; proposing an amendment to the Minnesota Constitution, Article XIV to permit proceeds from future increases in motor fuel taxes to be deposited in the state treasury and removing certain restrictions on highway bonds; appropriating money; amending Minnesota Statutes 1974, Sections 161.081; 161.082, by adding a subdivision; 161.12; 296.02, Subdivision 1; Chapter 296, by adding a section; and Laws 1974, Chapter 534, Section 4, Subdivision 4, and Section 5, Subdivision 3; and Laws 1975, Chapter 13, Section 71, Subdivisions 1, 2, 4, and by adding a subdivision; repealing Laws 1974, Chapter 534, Section 5, Subdivision 4."

The act contains 28 sections whose substance is summarized below:

Sections 4-8: redefine the metropolitan transit taxing district and reduce the rate of tax which the Metropolitan Transit Commission (MTC) may levy therein; authorize the MTC to sell transit service beyond the district; authorize the levy of taxes within the metropolitan transit area but without the metropolitan transit taxing district; redefine the conditions for the lower fare available to those under 18, which service is subsidized by this tax.

Sections 9-13, 27: amend L. 1974, c. 534, with respect to the powers of the state planning agency in administering the supplemental public transit aid program; appropriate money to this

program and for its administration; and allocate certain unobligated funds to the public transit demonstration program.

Sections 1-3: increase the excise tax on gasoline used to fuel motor vehicles driven on public highways and exempt certain fuel from the tax.

Sections 25, 26: propose an amendment to Minn. Const. art 14 ("Public Highway System") to provide that revenues derived from any increase over the August 1, 1975, excise tax rate on fuel be paid into the general fund in the state treasury; and to eliminate certain limitations on bonds issued to finance the construction, improvement and maintenance of a trunk highway system.

Section 20: authorizes construction of acoustical barriers along interstate highways and allocates funds from the gasoline excise tax for this purpose.

Sections 14, 15, 18, 19: appropriate money to the department of highways for completion of 1975 construction; prohibit construction on certain trunk highways; authorize certain other road construction; redefine one existing trunk highway and add several new routes to the trunk highway system.

Sections 22-24: provide that a certain percentage of the highway user tax distribution fund be expended on certain town road bridge structures.

Sections 16, 17, 21: authorize review of the uncompleted sections of the interstate highway system in the 7-county metropolitan area and appropriate funds to the metropolitan council for that purpose; establish a legislative study commission to evaluate the policies, programs, projects, costs and financing of the Minnesota department of highways.

Section 28: provides for the effective dates of the various provisions.

We have described the purposes of the single subject rule, Minn. Const. art. 4, § 17, in numerous cases, and we have cautioned that a statute should be invalidated by authority of art. 4, § 17, only if the challenged statute embodies the mischief sought to be prevented by that provision. See, e. g., Thomas v.

Housing & Redevelopment Authority of Duluth, 234 Minn. 221, 48 N. W. 2d 175 (1951) ; Johnson v. Harrison, 47 Minn. 575, 50 N. W. 923 (1891). Article 4, § 17, contains two proscriptions —one with respect to subject; the other, title—which serve independent though interrelated purposes.

The function of the title requirement is to provide notice of the interests likely to be affected by the law and "to prevent surprise and fraud upon the people and the legislature by including provisions in a bill whose title gives no intimation of the nature of the proposed legislation." Johnson v. Harrison, 47 Minn. 575, 577, 50 N. W. 923, 924. Similarly, we have said that the purpose of the requirement that the one subject be expressed in the title "is to prevent [the title] from being made a cloak or artifice to distract attention from the substance of the act itself." State ex rel. Olsen v. Board of Control, 85 Minn. 165, 175, 88 N. W. 533, 537 (1902).

The reason behind the requirement that each law embrace but a single subject is well-described in State v. Cassidy, 22 Minn. 312, 322 (1875) :

"* * * The well-known object of this section of the constitution, which declares that 'no law shall embrace more than one subject, which shall be expressed in its title,' was to secure to every distinct measure of legislation a separate consideration and decision, dependent solely upon its individual merits, by prohibiting the fraudulent insertion therein of matters wholly foreign, and in no way related to or connected with its subject, and by preventing the combination of different measures, dissimilar in character, purposes and objects, but united together with the sole view, by this means, of compelling the requisite support to secure their passage."

The "combination of different measures, dissimilar in character, * * * united together with the sole view, by this means, of compelling the requisite support to secure their passage" is a practice commonly known as "logrolling." See, Johnson v. Harrison, 47 Minn. 575, 577, 50 N. W. 923, 924. In simpler terms, logrolling

can be described as "the attachment of undesirable 'riders' upon bills certain to be passed because of their public popularity or desirability." 1A Sutherland, Statutory Construction (4 ed.) § 17.01.

Plaintiffs argue that L. 1975, c. 203, is unconstitutional on both subject and title grounds. They contend that the law violates the single subject provision in two ways: (1) that section 25 proposes a constitutional amendment which is a single subject in and of itself; and (2) that the statute exemplifies the practice of logrolling. Additionally, plaintiffs argue that the title, "[a]n act relating to transportation," is too broad to express a single subject.

1. Plaintiffs characterize as their strongest argument the contention that a proposed constitutional amendment is a single subject in and of itself. In proof of their assertion, plaintiffs ask the court to take judicial notice of their research which shows that all constitutional amendments ever proposed by the Minnesota legislature before c. 203 were proposed in separate bills.

Plaintiffs concede that the constitution imposes no requirement as to the form a proposed constitutional amendment must take. That it might be preferable for the legislature to propose amendments separately rather than to include them in bills containing other provisions is a matter addressed to legislative discretion and not judicially cognizable. Our concern is whether c. 203 contains more than a single subject.

Section 25 of L. 1975, c. 203, proposes an amendment to Minn. Const. art. 14, entitled "Public Highway System." Article 14 and the proposed amendment to it concern excise taxes levied upon means used to propel vehicles on the public highways and bonds issued to finance the construction of the trunk highway system. Other sections of c. 203 concern these same matters. If all the provisions of a law relate to a single subject, Minn. Const. art. 4, § 17, is not offended by the fact that some of the provisions are ultimately to be embodied in the constitution and others in various statutes.

Plaintiffs argue that one purpose of the single subject rule is "to secure to every distinct measure of legislation a separate consideration and decision * * *." State v. Cassidy, 22 Minn. 312, 322. They submit that no measure is deserving of more consideration than an amendment to the constitution. But the Cassidy court was concerned with *distinct* measures of legislation; i. e., with "prohibiting the fraudulent insertion * * * of matters wholly foreign, and in no way related to or connected with its subject * * *." 22 Minn. 322. There is no suggestion of fraud here. The subject matter of the proposed amendment is germane to that of the rest of c. 203. The single subject rule was not intended to inhibit comprehensive legislation. Individual provisions can, in fact, often best be considered when read in juxtaposition to other provisions to which they relate.

Furthermore, the legislature merely proposes amendments to the constitution. The people decide whether to adopt them, Minn. Const. art. 9. § 1. In contrast, the legislature's decision on statutory matters is final. Thus there is no justification for applying the prophylactic purposes of art. 4, § 17, more strictly to a constitutional amendment than to other legislative acts.[2]

---

[2] The Minnesota Constitution does not prescribe either the form or the manner of submitting a proposition for an amendment to the people, leaving this to the judgment and discretion of the legislature. State ex rel. Marr v. Stearns, 72 Minn. 200, 218, 75 N. W. 210, 214 (1898). Minn. St. 3.20 provides that "[e]very act for the submission of an amendment to the constitution shall set forth the section as the same will read in case the amendment is adopted, with such other matter only as may be necessary to show in what section or article the alteration is proposed. It shall be submitted and voted upon at the general election next ensuing in the manner provided for by the general law relating to such elections. * * *" Section 3.21 provides that the attorney general, at least 4 months preceding such election, shall furnish to the secretary of state a statement of the purpose and effect of all amendments proposed showing clearly the form of the existing sections and of the same as they will read if amended; and in the October preceding the election the secretary of state shall give 2 weeks' published notice of such statement in all legal newspapers of the state. Section 203A.31, subd. 2, provides that in the preparation of the prescribed ballot "* * * the secre-

We hold that a proposed constitutional amendment is not a single subject in itself and that the single subject provision, Minn. Const. art. 4, § 17, is not violated by the inclusion of a proposed amendment in a bill containing other provisions so long as the amendment and the other provisions are all germane to the same general subject.

Plaintiffs argue that the act contains another "mischief" sought to be prevented by Minn. Const. art. 4, § 17, in that it exemplifies the practice of logrolling. In proof, plaintiffs ask the court—

"* * * to take judicial notice of House and Senate Journals for 1973 and 1975, and specifically, of the numerous attempts to gain passage of certain elements ultimately contained in Chapter 203, when those elements were proposed standing by themselves. * * * In the 1973 and 1975 sessions, approximately 30 bills were introduced concerning the subject of increases in gas tax, the use of acoustical barriers, constitutional amendments regarding the highway trust fund, freeway construction moratoriums, change in user tax apportionment, miscellaneous bonding bills for trunk highways and transit purposes, and an appropriation to the highway commissioner from the general fund. Repeated efforts by certain elements in the legislature to enact these provisions separately failed time and time again. Only when these elements were contained in what amounts to an 'omnibus bill' were the measures able to gain approval."

Plaintiffs' argument is misdirected. Logrolling is the combination of different and disconnected subjects. That certain provi-

tary of state shall apply an appropriate title to each proposition and question, which title shall be approved by the attorney general, and shall consist of not more than one printed line above the proposition or question to which it refers." The opposition to the amendment asserted in the instant litigation is somewhat mooted by the defeat of the amendment at the polls. An affirmative vote of 989,296 was required for its passage, but it received only 552,593 affirmative votes out of 1,978,590 votes cast in the general election.

sions individually failed of enactment does not mean that combined in a single bill they comprise different and disconnected subjects. None of the provisions of this bill can be characterized as "riders," having no relation to the general subject of the bill. As we stated in Johnson v. Harrison, 47 Minn. 575, 577, 50 N. W. 923, 924, and have repeated in numerous subsequent cases:

"Again, while this provision is mandatory, yet it is to be given a liberal, and not a strict, construction. It is not intended nor should it be so construed as to embarrass legislation by making laws unnecessarily restrictive in their scope and operation, or by multiplying their number, or by preventing the legislature from embracing in one act all matters properly connected with one general subject. The term 'subject,' as used in the constitution, is to be given a broad and extended meaning, so as to allow the legislature full scope to include in one act all matters having a logical or natural connection. To constitute duplicity of subject, an act must embrace two or more dissimilar and discordant subjects that by no fair intendment can be considered as having any legitimate connection with or relation to each other. All that is necessary is that the act should embrace some one general subject; and by this is meant, merely, that all matters treated of should fall under some one general idea, be so connected with or related to each other, either logically or in popular understanding, as to be parts of, or germane to, one general subject."

Every matter incorporated in c. 203 concerns the use, financing and construction of a public highway transportation system. In more general terms, c. 203 is an act "relating to transportation." The act does not exemplify impermissible logrolling.

2. Plaintiffs' final argument is that the term "transportation" is too broad to express a single subject. In State ex rel. Pearson v. Probate Court, 205 Minn. 545, 552, 287 N. W. 297, 301 (1939), affirmed, 309 U. S. 270, 60 S. Ct. 523, 84 L. ed. 744, 126 A. L. R. 530 (1940), we said:

" '* * * The generality of the title of an act is no objection, provided only it is sufficient to give notice of the general subject

of the proposed legislation and of the interests likely to be affected. The title was never intended to be an index of the law.

\* \* \* \* \*

"A title broader than the statute, if it is fairly indicative of what is included in it, does not offend the constitution."

Furthermore, "[i]t is not essential that the best or even an accurate title be employed, if it be suggestive in any sense of the legislative purpose." State ex rel. Olsen v. Board of Control, 85 Minn. 165, 175, 88 N. W. 533, 537.

"Transportation" is a general term. But no legislator could be misled by it. Anyone interested in any of the particulars of the bill would be advised by the title to look to the body of the law— or at least to look to the list of section subjects also detailed in the title. Correlatively, anyone *not* interested in any aspect of transportation would not later be surprised by any provision passed under the auspices of this act "relating to transportation," because no unrelated provisions are hidden surreptitiously within it.

As already noted, not only did the legislature give the law the general title of "[a]n act relating to transportation" but it also described the subject of each section. This court has said that:

"\* \* \* The subject may be expressed generally or by a description of its parts or subdivisions. The general subject need not be stated in the title if it is clearly disclosed or can be readily inferred from the details expressed." C. Thomas Stores Sales System, Inc. v. Spaeth, 209 Minn. 504, 512, 297 N. W. 9, 15 (1941).

The subject is expressed both ways in this title. Certainly taken as a whole, even if not by either of its two parts alone, the title is fairly indicative of the contents of the law.

Affirmed.